# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | |
|---|---|
| **MARCUS D. STEELE**<br>    **LA. DOC #562510**<br>VS. | **CIVIL ACTION NO. 6:10-cv-1788**<br><br>**SECTION P**<br><br>**JUDGE DOHERTY** |
| **ST. MARTIN PARISH SHERIFF'S**<br>**DEPARTMENT, ET AL.** | **MAGISTRATE JUDGE HANNA** |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Marcus D. Steele, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on November 19, 2010. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections. He is incarcerated at the Rayburn Correctional Center, Angie, Louisiana, however he complains that he was the victim of an assault by a fellow inmate, that he was denied prompt and appropriate medical care, that he was not provided appropriate bedding, and that he was denied access to an adequate law library while he was a pre-trial detainee at the St. Martin Parish Jail during the period from March 24, 2008 to March 19, 2010. He sued the St. Martin Parish Sheriff's Department, the Sheriff, and various corrections officials at the St. Martin Jail requesting compensatory damages for mental and physical injuries. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Background*

*1. Original Complaint [Doc. #1]*

In his original complaint plaintiff alleged that he "... was forced to sleep on the floor from 3/24/08 [until] 3/19/2010.." He claimed that on some unspecified date an inmate attempted to sexually assault him. According to plaintiff, he fended off the sexual assault but was injured in the fray receiving cuts to his head requiring 8 -10 staples to close the wounds. When plaintiff attempted to press charges against his assailant, plaintiff was himself charged with disturbing the peace by fighting. The assault charges plaintiff pressed against his assailant did not go to court.

On some unspecified date plaintiff requested medical assistance to remove the staples in his head. Assistance was denied and plaintiff's wounds became infected. Plaintiff excised the infection and staples with his plastic prisoner identification card.

Plaintiff identified the following defendants – Warden Guidry, Warden Clues, Assistant Warden Picard, Lt. Olivia, Lt. Allemond, and Assistant Warden Ernie (last name unknown). Plaintiff prayed for an unspecified amount of money damages for unspecified mental and physical injuries.

*2. Amend Order*

On February 22, 2011 plaintiff was directed to amend his complaint to provide more specific information. He was ordered to state whether or not he was afforded a mattress or other bedding; to provide the dates he was required to "sleep on the floor" and; to provide a description of the injury or harm sustained as a result of having to sleep on the floor.

He was also ordered to give a detailed description of the assault, to provide the date of the assault, and, to identify the defendants responsible for the assault. He was ordered to provide more

2

detailed information concerning his claim that he was denied adequate medical attention following the assault; to state the nature of and dates he did receive treatment and, to identify the individuals who denied him appropriate care. Plaintiff was also ordered to provide the date he was sentenced so that a determination may be made as to whether he was a detainee or a convict when the events complained of occurred.

*3. Amended Complaint [Doc. 6]*

On February 22, 2011 plaintiff submitted an amended complaint. Plaintiff alleged a new claim – that he was "denied the ability to have any kind of legal aid, such as a law library and or inmate [counsel]..." because the law library was used to house inmates. He blamed St. Martin Parish Sheriff Ronnie Theriot, Warden Guidry and Assistant Warden Picard for denying him his right of access to the courts.

Plaintiff reiterated that he was required to sleep on the floor from March 24, 2008 until March 19, 2010. He claimed that his complaints on "many occasions" were unheeded by unspecified prison staff. Plaintiff claimed that he filed a grievance but it was ignored. <u>Plaintiff did not allege whether he was provided a mattress as he was directed to do in the amend order</u>. He faulted Lt. Allemond, Warden Guidry, Assistant Warden Picard, and, the unnamed head nurse, who, according to plaintiff, wrote a "slip to be placed in a bottom bunk..." Plaintiff claimed that he suffered "back and joint pains" as a result of the sleeping arrangements but he did not describe the severity or duration of this pain.

Plaintiff also claimed that he "...had a very bloody run-in with an inmate and had to go to the hospital and have [his] head stapled in multiple places." Plaintiff claimed that the inmate attempted to sexually assault him and in the process plaintiff struck his head on the food tray holder and floor.

Plaintiff did not allege the date of the attack, nor did he allege which defendants were responsible.

According to plaintiff, he told Assistant Warden Picard that he wanted to file charges, however, a few days later plaintiff was charged with disturbing the peace by fighting. According to plaintiff none of the charges "went to court."

Plaintiff also alleged that on some unspecified date he requested a hospital visit to have the staples removed from his head wounds. Three weeks later, when his request was ignored, plaintiff removed the staples using his plastic identification card. According to plaintiff, he was placed in a one-person cell with no running water or shower, and his wounds became infected. He blamed Assistant Warden Picard, Lt. Allemond, Sgt. Oliva, and "the head nurse." Plaintiff failed to allege the date that he sought medical treatment for his wounds and he failed to provide a detailed description of the harm he sustained when the requested care was delayed or denied. Finally, he did not allege how long he was in the cell without water nor the period of time that elapsed during which he was unable to shower.

Plaintiff concluded his amended complaint with the following statement, "And the main reason all of this could have been prevented but wasn't is because none of the cell doors worked at the time." However, he did not elaborate on this claim nor did he describe the harm that occurred as a result of the alleged malfunction.

### *4. Second Amend Order [Doc. 8]*

As noted above, plaintiff provided some, but not all of the information he was ordered to provide in the first order directing amendment. In addition, he added a new claim – that he was denied his right of access to the courts. (He also implied that his injury or the assault and fight he was engaged in was due to a malfunction in the cell door.) Further, he named additional defendants

4

– Sheriff Theriot and the unidentified head nurse at the facility.

On May 10, 2011 plaintiff was again ordered to amend his complaint. He was specifically directed to allege "... the **DATE** upon which each incident occurred..." and to specifically state "...whether he was provided a mattress during the period of time that he was required to sleep on the floor." Finally, he was directed to allege the "...nature and extent of the injuries or harm he sustained."

Plaintiff was also directed to provide the date that his access to court claim arose and to state whether he was represented by retained counsel or court-appointed counsel during the time he was denied access to the law library. He was also directed to describe how he was prejudiced by being denied access to the law library.

Finally, he was specifically directed to amend his complaint to clarify his claim concerning the malfunction of the cell doors. He was advised that his failure to respond to the amend order would result in the dismissal of his complaint. [Doc. 8]

### 5. *Second Amended Complaint [Doc. 9]*

On June 6, 2011 plaintiff filed his second amended complaint. Plaintiff's response to the query concerning whether he was provided a mattress was equivocal. He wrote, "No I didn't have any until I was placed in the holding cell in the front of the jail where all of the medical cells are located. (I was placed there after the inmate tried to sexually assault me and I returned from the hospital.)... Soon after I was moved to Dorm-2 (aka the law library) where I slept on the floor with a mattress for two days until an elderly man came in and the nurse ordered me to give him my mattress and I complied with what she said. This happened on

November 24th, [2008][1] I know because I was able to see the TV and I saw the date when the news aired."

With regard to the claim concerning medical care, plaintiff acknowledged that he was placed in the holding cell following the alleged assault. He claimed, " I was supposed to be there for medical observations but all they did was send the nurse to give me some kind of pills. When I asked what they were she wouldn't tell me. Not knowing what the medication was I refused to take it any more and soon after I was moved to Dorm-2."

Plaintiff also implied that he was taken immediately to the University Medical Center in Lafayette for treatment in October 2008 following the assault. However, plaintiff did not elaborate or otherwise refer to his claim concerning the infection that allegedly developed.

Plaintiff claimed that the complained of assault occurred on October 24, 2008 at 2:50 p.m. According to plaintiff he was subsequently charged with disturbing the peace by fighting by Sgt. Olivar.

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from

---

[1] Plaintiff did not allege the year, however, since he later alleged that the assault which caused his injury occurred in October 2008, it is logical to assume that the mattress incident occurred in November 2008.

6

such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998). Nevertheless, in order to be afforded the benefits of this assumption a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); see also *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff filed an original complaint; he was twice directed to amend his complaint to provide

specific facts. He has thus provided an original complaint and two amended complaints. Further amendment would serve no useful purpose.

Read liberally, plaintiff's complaint, and amended complaints allege that the defendants failed to protect him from assault by his fellow inmate; that they failed to provide timely and appropriate medical care, and that the sleeping arrangements were inadequate. He also alleged that he was denied access to the law library and thus implied that he was denied his constitutional right of access to the courts.

*2.* **Sleeping Arrangements, Inmate Assault, and Medical Care Complaints**

Plaintiff was a pre-trial detainee while he was incarcerated at the St. Martin Parish Jail. Pre-trial detainees have a constitutional right to be free from punishment. *See Bell v. Wolfish*, 441 U.S. 520, 534-37, 99 S.Ct. 1861, 1871-73, 60 L.Ed.2d 447 (1979). Accordingly, a pre-trial detainee's claims of unconstitutional conditions or circumstances are analyzed under the Fourteenth Amendment's guarantee of due process of law as opposed to the Eighth Amendment's prohibition of cruel and unusual punishment, which applies only to convicted inmates. *See id.* at 535 n. 16, 99 S.Ct. at 1872 n. 16; *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996).

Such claims, when filed pursuant to Section 1983 by pre-trial detainees, are analyzed as either conditions of confinement cases or as episodic acts resulting in the deprivation of constitutional rights. A "conditions of confinement" case raises a constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement. *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997) (citing *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir.1996). In such cases, the constitutional harm is caused by the condition itself. "This is true, for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions." *Scott v. Moore*,

8

114 F.3d 51, 53 (5th Cir.1997). When a pretrial detainee challenges the general conditions of confinement, as opposed to particular acts or omissions, a constitutional violation exists only if it appears that the complained of conditions of confinement are not reasonably related to a legitimate, non-punitive governmental objective. *See Hare*, 74 F.3d at 640 (citing *Bell*, 441 U.S. at 538-39, 99 S.Ct. at 1873-74); see also *Scott*, 114 F.3d at 53 (citing *Hare* ).

On the other hand, if the detainee's complaints are based on particular acts or omissions of one or more officials, the action is characterized as an "episodic act or omission" case. *See Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir.1999); *Hare*, 74 F.3d at 645. Under this analysis, a detainee's due process rights are violated only if the defendants acted with deliberate indifference to a substantial risk of serious harm which resulted in injury. *Wagner v. Bay City,* 227 F.3d at 324 (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996) *(en banc)*; see also *Edwards v. Johnson*, 209 F.3d 772 (5th Cir. 2000) ("To prove an underlying constitutional violation in an episodic acts case, the detainee must establish that the official acted with subjective deliberate indifference."). Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. *Id.* Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Id.*

In other words, deliberate indifference in this context means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. Thus, "... the failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239

F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from <u>a negligent or even a grossly negligent response</u> to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

In addition, the alleged deprivation must be "sufficiently serious," which means that "the inmate must show that he [was] incarcerated under conditions posing <u>a substantial risk of serious harm</u>." *Farmer*, 511 U.S. at 847 (emphasis supplied). To rise to the level of a constitutional violation, the conditions must be " 'so serious as to deprive [plaintiff] of the minimal measure of life's necessities... '"*Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir.2003) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995)).

Finally, in order to prevail on such a claim, the plaintiff must demonstrate that he suffered some harm that was more than *de minimis*. See *Siglar v. Hightower*, 112 F.3 191, 193-94 (5th Cir.1997); *Alexander v. Tippah County, Miss*, 351 F.3d at 630-31; *Luong v. Halt*, 979 F.Supp. 481, 486 (N.D.Tex.1997).

### *a. Sleeping Arrangements*

In his original complaint plaintiff implied that he was aggrieved by "general conditions of confinement", specifically that he was required to sleep on the floor during the entire period of his detention from March 24, 2008 until March 19, 2010. He was ordered to amend his complaint to state whether or not he was provided a mattress or other bedding during this period. His initial response in the first amended complaint merely reiterated the claim that he slept on the floor from

March 2008 to March 2010; he did not state whether or not he was provided a mattress or bedding.

He was again directed to address this issue and in his second amended complaint plaintiff conceded that he was provided a mattress when he was placed in the holding cell and, he further asserted that he was placed in the holding cell immediately after the complained of assault, or sometime in October 2008.

He then conceded that he was provided a mattress when he was transferred to Dorm-2, however, he then alleged that he gave up his mattress for an elderly prisoner under orders from the unnamed jail nurse. He did not thereafter allege whether he was denied a mattress during the remaining months of his confinement.

To the extent that plaintiff maintains that he had a Constitutional right to an elevated bed, he fails to state a claim for which relief may be granted since the Constitution nowhere guarantees such a right. *Mann v. Smith*, 796 F.2d 79, 85-6 (5th Cir.1986)(pretrial detainees do not have a constitutional right to an elevated bed.). The total deprivation of a mattress or any bedding for a significant period of time, however, may result in a Constitutional violation. *Oladipupo v. Austin*, 104 F.Supp.2d 626, 640 (W.D.La. 2000). Despite having twice been specifically ordered to do so, plaintiff did not clearly and unambiguously allege what period of time, if any, he was forced to sleep on the floor with no mattress or other bedding.

Plaintiff did, however, imply that he was without a mattress and bed from March – October, 2008. This claim, although dubious, must be assumed to be true, and under the analysis set forth above, the pleading raises a condition of confinement claim. Such a claim would ordinarily require the defendants to establish some valid non-punitive governmental objective.

However, in this case, the court need not reach that issue. District Courts are authorized to

dismiss a claim as frivolous "it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations." *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). Limitations may be raised *sua sponte*. *See Harris v. Hegmann,* 198 F.3d 153 (5th Cir. 1999).

The Supreme Court has held that the statute of limitations for a §1983 action is the same as the statute of limitations in a personal injury action in the state in which the claim accrues. *Wilson v. Garcia*, 471 U.S. 261, 279-280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1984). However, the date of accrual for a §1983 claim is a question of federal law. *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Longoria v. City of Bay City*, 779 F.2d 1136 (5th Cir. 1986). "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski*, 51 F.3d at 516, quoting *Vigman v. Community National Bank and Trust Co.*, 635 F.2d 455, 459 (5th Cir. 1981). A plaintiff need not realize that a legal cause of action exists but only that the facts support a claim. *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

Plaintiff's conditions of confinement claim – that he was denied both a mattress and a bed– accrued during the period from March – October 24, 2008, since by his own admission he was afforded a mattress when he was transferred from the dormitory to the holding cell following the alleged assault. Thus, plaintiff's conditions of confinement claim based upon the alleged deprivation of the minimal necessities of a mattress and bed accrued by October 24, 2008 at the latest.

The Fifth Circuit has approved application of Louisiana's one-year personal injury statute of limitations provided by La. Civ.Code Ann. art 3492 in a §1983 action. *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980). Therefore, since plaintiff's claim accrued by or on October 24, 2008, he had

one-year, or until October 28, 2009 within which to file his complaint. Plaintiff's complaint – insofar as he alleged that he was totally deprived of appropriate bedding from March - October 2008 was not filed until November 2010, well beyond the one-year period of limitations and therefore, his conditions of confinement claim must be dismissed as time-barred and therefore frivolous.

After October 2008, and for the remainder of his confinement at the St. Martin Jail, it appears that plaintiff was denied appropriate bedding sporadically if at all. His pleadings do not allege that he was denied a mattress for the remainder of his stay at the St. Martin Parish Jail. At best, plaintiff implied that he was, at some point in time, asked to surrender his bedding to an elderly inmate. Therefore, for the period of time beginning with his placement in the holding cell following the assault until his transfer to another facility, plaintiff's inadequate bedding complaint must be considered as episodic and therefore analyzed under the deliberate indifference standard. As previously noted, under this standard, in order for a detainee to prevail on a civil rights claim he must allege and prove that the defendants (1) were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) that they actually drew that inference; and (3) that their response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. Here, there has been showing of deliberate indifference on the part of any of the named defendants. Plaintiff has not demonstrated that the complained of sleeping arrangements posed a substantial risk of serious harm. Indeed, plaintiff, by his own admission suffered only *de minimis* physical injury. As previously noted, plaintiff was twice ordered to describe the injury he sustained as a result of having been provided inappropriate bedding. In response he alleged only that he suffered "back and joint pains" as a result of the sleeping arrangements but he did not describe the severity or duration of this pain. Thus, his claim for

damages is legally frivolous. *Compare Siglar v. Hightower*, 112 F.3 191, 193-94 (5th Cir.1997) (holding a sore, bruised ear lasting for three days did not constitute a physical injury sufficient to state a claim for excessive force); *Alexander v. Tippah County, Miss*, 351 F.3d at 630-31 (prisoners sent to an administrative segregation cell-a/k/a "the hole"- having a clogged drain with raw sewage on the floor, causing claimants to suffer from nausea and vomiting, constituted *de minimis* injuries in light of the fact that the inmates were released from the isolation cell after twenty-four hours and had no sustained injuries); *Luong v. Halt*, 979 F.Supp. 481, 486 (N .D.Tex.1997) (holding sore muscles, scratches, abrasions and bruises do not constitute sufficient injury to state a claim for relief).

### b. Failure to Protect – Inmate Assault

As previously noted, the constitutional rights of a pretrial detainee flow from the due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996). When a pretrial detainee brings a failure to protect claim that is directed toward a particular incident, as opposed to a claim directed at overall conditions of confinement, the claim is properly analyzed under the same Eighth Amendment legal standards that apply to claims made by convicted inmates. *Hare*, 74 F.3d at 645–46. "[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." *Id.* at 650.

Prison officials have a duty under the Eighth Amendment to protect inmates from violence at the hands of other prisoners. *Farmer v. Brennan*, 114 S.Ct. 1970 (1994); *Horton v. Cockrell*, 70 F.3d 397, 400–01 (5th Cir.1995). However, not every injury "by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety."

*Farmer*, 114 S.Ct. at 1977. To establish a failure-to-protect claim, the plaintiff must show that he was detained "under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir.1995). "In order to act with deliberate indifference, the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference. *Id.*, citing *Farmer*. Plaintiff has not alleged facts sufficient to demonstrate deliberate indifference on the part of any of the named defendants. His pleadings certainly do not suggest that the named defendants, or any one else, were aware that a substantial risk of harm existed and therefore his failure to protect claim is frivolous.

Further, even if plaintiff could establish the requisite deliberate indifference on the part of the defendants, his failure to protect claim would still be subject to dismissal as frivolous. As previously noted, this court is authorized to dismiss a claim as frivolous "it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations." *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). Plaintiff's claim that he was assaulted and injured by a fellow inmate accrued on October 24, 2008, the date of the alleged attack. On that date plaintiff had knowledge of all the facts necessary to know that his rights were violated. Therefore, since plaintiff's failure to protect claim accrued on October 24, 2008, he had one-year, or until October 28, 2009 within which to file his complaint. Plaintiff's complaint was filed in November 2010, well beyond the one-year period of limitations and therefore, is subject to being dismissed as frivolous.

### c. Medical Care

Plaintiff alleged in his original complaint that his requests to be transported to the hospital

in order to have the staples that were used to close his scalp wounds removed were ignored and he was forced to use his plastic prisoner identification card to excise the infected sites. Plaintiff did not allege the date that these events occurred but claimed that he excised his wounds three weeks after his request for transportation to the hospital was ignored.

Plaintiff also alleged that he refused medication provided for his injuries because the nurse refused to identify the medication. As shown above, these episodic complaints are actionable only if the plaintiff can allege facts sufficient to establish deliberate indifference on the part of the defendants.

Further, the medical care claim arose within weeks of the assault or sometime in the fall or winter of 2008. As shown above, plaintiff had one-year or until the corresponding date in 2009 to file his complaint based on his claim that he received inadequate medical attention following the assault. Plaintiff's complaint, filed in November 2010, is clearly prescribed and should be dismissed as frivolous.

**3. Access to Courts**

In his first amended complaint plaintiff alleged that he was denied legal aid or inmate counsel while housed at the St. Martin Parish Jail because the law library had been converted to a dormitory. In so doing, plaintiff implied that the defendants interfered with his right of access to the courts.

"It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions

of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996). Plaintiff has not shown how his ability to prepare and transmit legal documents was in any way been inhibited by the defendants.

Further, and to the extent that plaintiff sought to represent himself against the criminal charges that accounted for his detention, he likewise has failed to state a claim for which relief may be granted. Under established law, the appointment of counsel (or even the offer to appoint counsel) satisfies a detainee's right of access to the courts. *Degrate v. Godwin*, 84 F.3d 768 (5th Cir. 1996). It must be presumed, absent any allegations to the contrary, that plaintiff was either offered representation and declined or accepted and was provided a court-appointed attorney, or hired his own counsel. Thus to the extent that plaintiff implies that the denial of access to the law library inhibited his criminal defense, his claim is frivolous.

Finally, in order for plaintiff to state a claim that he was denied his constitutional right of access to the courts, he must "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354.

Plaintiff was ordered to amend his complaint to show prejudice, however he failed to do so. Since plaintiff has not shown prejudice resulting from the deficiencies in the law library, he is not entitled to relief.

### *Recommendation*

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaints be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Lafayette, Louisiana September 22, 2011.

_____
PA
UNITED STATES MAGISTRATE JUDGE